**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON GROSSINGER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2039** |
| | : | |
| **GOOGLE LLC,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**BEETLESTONE, C. J.**                                                                 **JUNE 9, 2026**

Brandon Grossinger, a repeat *pro se* litigant in this Court, filed this case asserting claims

under the Americans with Disabilities Act ("ADA") against Google LLC and Stephen D. Watson

in his official capacity as Bucks County Court Administrator.  He also asserts a breach of

contract claim against Google under Pennsylvania law.  Grossinger also names IBM Corporation

in the caption of the Complaint and list of defendants, but makes no specific claim against it.

Grossinger also seeks leave to proceed *in forma pauperis* and has filed six motions for temporary

restraining orders.[1]  The Court will grant Grossinger leave to proceed without paying the fee for

---

[1] Grossinger opened this case on March 29, 2026 by filing an Emergency Supplemental Declaration (ECF No. 1), followed on April 1, 2026 by an Emergency Motion for Temporary Restraining Order (ECF No. 2).  In an Order filed on April 2, 2026 (ECF No. 5), the Court directed Grossinger to file an actual complaint and pay the filing fee for the case or seek leave to proceed *in forma pauperis* if he sought to proceed with this case.  He filed his Complaint (ECF No. 9) and an *in forma pauperis* motion (ECF No. 7) on April 29, 2026, but the financial information he provided was incomplete.  On May 4, 2026, the Court denied his *in forma pauperis* motion because it did not contain sufficient financial information, directing him to resubmit the application or pay the filing fee so that this case could proceed.  Even though he filed numerous other emergency motions and notices, Grossinger did not refile his *in forma pauperis* request until June 3, 2026 (ECF No. 19).

Because Grossinger included Bucks County in the caption of his first submission, the Clerk of Court recorded it as a named Defendant.  Grossinger did not, however, name Bucks County in his Complaint so it will be terminated as a named defendant.

this case.  Because his claims are not plausible, the Complaint will be dismissed and his motions

for injunctive relief will be denied since he cannot show the likelihood of success on the merits

of his claims.

## I.    FACTUAL ALLEGATIONS[2]

Grossinger asserts he has "documented disability-related needs" who "relies on written

and digital tools to manage records, communications, and legal deadlines."  (Compl. ¶ 4.)  He

does not, however, describe his disability in his Complaint.  He seeks declaratory and injunctive

relief, preservation of data and logs, "restoration of functional access where appropriate," "non-

destructive exports where restoration is not immediately possible," and an account reconciliation.

(*Id*. ¶ 3.)  He asserts that he uses Goggle products, including Workspace, Gmail, Drive, and

others for email, records, account administration, "disability-related documentation," and

---

[2] The factual allegations set forth in this Memorandum are taken from the Complaint (ECF No. 9).  The Court adopts the sequential pagination assigned to all pleadings by the CM/ECF docketing system.

Grossinger included allegations of fact in numerous pre- and post-Complaint pleadings. The Federal Rules of Civil Procedure, however, do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant.  *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").  Where noted, additional factual information may be cited from other *pro se* pleadings filed by Grossinger in connection with the requests for emergency relief so that the true nature of the claims may be understood.  *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992) (explaining that, when evaluating a motion to dismiss, a court may look to "allegations contained in the other court filings of a pro se plaintiff" to clarify statements made in the complaint (citing, *inter alia*, *Hughes v. Rowe*, 449 U.S. 5, 10 (1980))); *cf. Maio v. Aetna, Inc.*, 221 F.3d 472, 485 n.12 (3d Cir. 2000) ("[W]hile this case involves a motion to dismiss under Rule 12(b)(6), the Supreme Court . . . confirmed that we may use appellants' brief 'to clarify allegations in the complaint whose meaning is unclear.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000))).

"litigation-preservation workflows." (*Id*. ¶ 5.)  He uses IBM cloud, account and support services for research, records, and mitigation and, although he asserts no specific claims against IBM, he has named it as a Defendant "narrowly for preservation, account-state reconciliation, access, and billing/resource issues." (*Id*. ¶ 6.)  Defendant Watson, in his official capacity as Bucks County Court Administrator, is allegedly responsible for "state-court administrative access barriers affecting [Grossinger's] individual ability to obtain accessible court procedures and meaningful participation in state proceedings." (*Id*. ¶ 7.)

Grossinger asserts that he "used admin@bunnyflowers.org[3] as his primary Google Workspace administrator and Super Admin identity connected to email, records, account recovery, Google Admin, Drive, Vault, and disability-access documentation workflows."[4] (*Id*. ¶ 11.)  A Google product called "Google Workspace for Nonprofits" was allegedly represented to him as "including nonprofit email/admin controls and a 100 TB shared storage allocation." (*Id*. ¶ 12.)  In January 2026, he documented concerns that the expected storage and account entitlements had become "unavailable, reduced, displaced, or inconsistent following Enterprise or account-plan activity." (*Id*. ¶ 14.)  He "also documented disability-related accommodation

---

[3] In one of his prior lawsuits, *Grossinger v. Lichty*, Civ. A. No. 25-2510 (E.D. Pa.), Grossinger attempted to bring claims on behalf of an entity called Bunny's Flowers but was instructed that, as a *pro se* litigant he could not represent an entity in federal court and had to retain counsel for the entity.  When he failed to do so, the entity was dismissed from the case without prejudice.  In this case, Grossinger states that "he does not bring this action on behalf of Bunny's Flowers as an entity" but only references its "related systems" because he "personally used and administered those systems, depended on them for disability-access workflows, and needs access to records and account tools to protect his own rights and comply with court obligations." (Compl. ¶ 2.)  It is unclear from the documents Grossinger has submitted whether he or the entity is the owner of the web domain, email address, and associated electronic services he describes.

[4] Grossinger uses the term "disability-related workflows throughout his pleadings but does not state the meaning of the term.

needs and reliance on written/digital tools to communicate, manage records, and meet legal and administrative deadlines." (*Id*. ¶ 15.) He created "Google Vault litigation holds intended to preserve emails, files, metadata, and account records." (*Id*. ¶ 16.) He also "preserved screenshots and records showing Google's legal/compliance screens" because he believed the account contained health-related and disability-related records requiring preservation. (*Id*. ¶ 17.)

On April 28, 2026, after recognizing Grossinger's identity, Google displayed a message stating that the Workspace account had been suspended due to payment failure and that users would be unable to use Workspace services such as Gmail. (*Id*. ¶ 19.) He disputed the billing "characterization" because the account was associated with "nonprofit Workspace entitlements" and active preservation concerns and disability-related workflows. (*Id*. ¶ 20.) The suspension blocked his access to Gmail and the other services and his Super Admin identity itself was blocked, meaning he could not use ordinary administrative tools to verify preservation status, export records, cure or dispute billing, confirm license status, or determine whether Vault holds remained effective. (*Id*. ¶ 22.) Grossinger has observed IBM account suspension or access barriers during the same period, including an "inability to access dashboard information needed to verify active resources, billing exposure, credits, support status, and any data-preservation risk." (*Id*. ¶ 25.)

With regard to Defendant Watson, Grossinger asserts that he requested "disability-related accommodations" in Bucks County court-related proceedings, including written or email-based communications, accessible filing/service procedures, and procedures that would preserve legible records and exhibits. (*Id*. ¶ 27.) He claims that "state-court administrative processes forced or attempted to force paper/mail procedures, degraded visual exhibits, created unclear cure requirements, and impaired [his] meaningful access to the court as a disabled pro se

4

litigant." (*Id.* ¶ 28.)  Watson participated in or oversaw the appeal, denial, or administration of these accommodation and access issues.  (*Id.* ¶ 29.)

Based on these allegations, Grossinger asserts a claim under ADA Title III and a breach of contract claim against Google (Counts I and II), seeks declaratory and injunctive relief against Google and IBM to preserve all relevant data, logs, support notes, billing/license records, and related digital data (Counts III), and asserts access to courts claims under ADA Title II and 42 U.S.C. § 1983 against Watson (Count IV).  He seeks declaratory and injunctive relief from Google, including the preservation and restoration of all account data and administrative access; preservation-related declaratory and injunctive relief from IBM, and prospective declaratory and injunctive relief from Watson requiring accessible digital/written communications, clear procedures, and preservation of readable records and exhibits.

In his first motion seeking a temporary restraining order, Grossinger asserted that he had uncovered evidence of medical records tampering involving his CPAP machine.  (ECF No. 2 at 3.)  He claims the "Defendants commenced a coordinated campaign to dismantle [the Google and IBM] infrastructure and purge all associated data."  (*Id.*)  He claimed there was "active deletion" by Google and "imminent deletion" by IBM of data.  (*Id.* at 4.)  In his second motion, Grossinger asserted he documented "rapid account-state changes" and other problems "affecting accounts associated with [himself] and Bunny's Flowers."  (ECF No. 6 at 2.)  The "affected assets" are associated with himself Bunny's Flowers, bunnysflowers.org, admin@bunnysflowers.org, bunnysflowersus@gmail.com, and other Google accounts "associated with [himself] and/or Bunny's Flowers.  (*Id.* at 2-3, 5.)

In his third emergency motion, filed simultaneously with the Complaint, Grossinger repeats his factual allegations and again asks for preservation and restoration of records.  (ECF

No. 8.)  In a "Supplemental Notice" he filed on May 2, 2026, Grossinger asserted that his "treating medical provider documented disability-related limitations requiring additional time, clear written communication, and administrative accommodations" due to limitations affecting his "ability to navigate complex account systems, medical-device records, digital records, support portals, billing disputes, and court filings."  (ECF No. 10 at 1.)  He stated that "[w]ithin the last several hours, [he] located a large volume of Google Drive/Docs materials that [he] previously believed were deleted . . . contain[ing] substantial prior legal filings, work product, organizational records, and related metadata."  (*Id*.)  His access to admin@bunnysflowers.org, however, remained inconsistent or nonfunctional.  (*Id*. at 2.)  In another notice filed on May 10, 2026, he asserts that Google informed him his "Cloud Identity Free account for bunnsflowers.org had been placed in a 'read-only' state and was scheduled for suspension and cancellation on June 6, 2026."  (ECF No. 12 at 1.)  He adds that on April 23, 2026, a collection agency transmitted a collection letter to Bunny's Flowers referencing a delinquent balance of $71.24 owed to Google Workspace for the bunnysflowers.org account.  (*Id*.)  On May 2, 2026, Google sent notice that his AI Ultra Access subscription had been suspended and would be canceled even though he had "previously identified [the service] as a disability accommodation tool."  (*Id*. at 2.)  The notice was apparently sent to Grossinger's backup email account, admin@monumentalglass.com.  (*Id*.)  Grossinger asserts the suspension of this service during the time he "had active ADA accommodation requests pending with Google support – is material to [his] ADA and accessibility claims."  (*Id*.)  In a notice filed on May 14, 2026, Grossinger attached screen shots of subscription suspension and deletion warnings and alleged "active litigation hold and preservation configurations within Google Vault."  (ECF No. 13 at 1.)

In his fourth emergency motion filed on May 27, he states that Google Support opened a case in response to his complaints but he received only a "formally drafted, legally precise communication" acknowledging his "active litigation hold" and ADA accommodation request for email-only communications. (ECF No. 14 at 1.) He claims the legalistic response he received "is inconsistent with routine automated customer support and indicates coordinated legal review prior to response." (*Id.*) When he attempted to respond to Google support via his admin@monumentalglass.com domain, "all outbound communications were blocked" making the "support system" unreachable from his Google-administered domain. (*Id.*) His "nonprofit domain admin@bunnysflowers.org returned error 550 5.1.1. – 'account does not exist.'" (*Id.* at 2.)

Two days later, in a fifth emergency motion in which Grossinger included GODADDY LLC in the caption even though it is not a party to this case, he asserted that the United States Court of Appeals for the Third Circuit granted him an extension of time to seek reconsideration of affirmance of this Court's decision in *Grossinger v. Lichty*, No. 25-2510 (E.D. Pa.). (ECF No. 15 at 2, 11 (screenshot of order entered in *Grossinger v. Lichty*, No. 25-2477 (3d Cir.).)[5] Nonetheless, counsel for the defendants in that case "issued a written threat to permanently destroy all of Bunny's Flowers charitable assets, federal grant documentation, and evidence" located at the property involved in that lawsuit. (*Id.* at 2.) He claimed his dispute with Google involves an active litigation hold concerning that lawsuit. (*Id.* at 3.) He also mentions a "Christmas Shutdown Following ADA Request" involving GoDaddy, specifically that he submitted a formal ADA accommodation request to GoDaddy "due to chronic neurological and

---

[5] The docket of the Third Circuit case indicates that Grossinger's pending motions were denied on June 4, 2026. *Grossinger v. Lichty*, No. 25-2477 (3d Cir. (ECF Nos. 33, 34).)

pulmonary disabilities." (*Id*. at 2-3.)  It eventually restored data from a December 22, 2025 backup, but he lost data between that date and January 2, 2026.  (*Id*. at 4.)  In that same fifth emergency motion, Grossinger asserted that Defendant Watson denied him access to the courts and "retaliated against [his] ADA requests" by imposing a "paper-only filing requirement on a disabled pro se litigant whose disabilities preclude physical paper handling," converting his "digital evidence into paper format with ink-bleed redactions that rendered the evidence unreadable and destroyed its digital integrity." (*Id*. at 4.)  Watson stated that the Bucks County Court of Common Pleas "'cannot make further ADA accommodations' effectively barring [him] from filing necessary IFP documentation," and denying his IFP motion.  (*Id*.)  Attached to the motion are screenshots of documents from the Bucks County Court of Common Pleas returning Grossinger's submission to him, telling him not to fax or email documents, and directing him to return corrected documents to the court "either in person or via mail."  (*Id*. at 29-30.)  Another screenshot shows an apparent poor-quality copy of a document involving a dispute with Lichty. (*Id*. at 29.)  Grossinger labeled the screen shot "Watson Refusal of Further ADA Accommodations."  (*Id*.)

In another notice filed May 31, 2026, Grossinger asserted a "pattern of self-executing spoliation" by Google due, *inter alia*, to a cancellation notice for the bunnysflowers.org account sent to the backup account Grossinger controls, admin@monumentalglass.com.  (ECF No. 16 at 1-3.)  Another notice also filed on May 31 asserts that "two imminent destruction events" were about to occur, namely the cancellation notice and a notice from counsel for Bunny's Flowers landlord that the entity's property on the leased premises would be unilaterally removed if not retrieved by June 14, 2026.  (ECF No. 17.)  Finally, in a sixth Emergency Supplemental Motion (ECF No. 21), Grossinger states that on June 4, 2026, "in a new support chat" a Google

employee confirmed that its own support team cannot access the affected account and directed him back to automated recovery forms that have failed for months. (*Id*. at 2-3.) He refers to this as a circular and ineffective recovery process and shows a pattern of targeting his "digital identity across Google's ecosystem." (*Id*. at 3-4.) He again references his doctor's recommendations that he avoid fragmented and stressful communication, which the chat required him to engage in, that the agent offered a voice callback but his medical conditions are such that he "can only pick up unpredictably," he has not been able to establish a single point of contact, and that Google is violating a litigation hold. (*Id*. at 4-5.)

## II.    STANDARD OF REVIEW

The Court grants Grossinger leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the Complaint as true, draw all reasonable inferences in the Grossinger's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds*

*recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court construes *pro se* allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).  ).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).  "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*."  *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

10

## III.   DISCUSSION

### A.   IBM

Grossinger asserts that he uses IBM Cloud, account, and support services for research, records, and mitigation.  He named IBM as a Defendant but does not assert any claims it.  Rather Grossinger states he named IBM as a Defendant "narrowly for preservation, account-state reconciliation, access, and billing/resource issues."  (Compl. ¶ 6.)  In other words, he appears to have named IBM as a Defendant because it is a custodian of records via its Cloud that Grossinger may need in this or some other litigation, such as his already dismissed case seeking pre-litigation discovery regarding an allegedly defective CPAP machine.  *See Grossinger v. Apria Healthcare LLC*, Civ. A. No. 26-2601 (E.D. Pa.).  Because Grossinger has asserted no legal claim against IBM, either under the ADA or otherwise, it will be dismissed as a Defendant.[6]

### B.   ADA Claim Against Google

---

[6] Notably, in his first motion seeking a temporary restraining order in this case, Grossinger asserted that he had uncovered evidence of medical records tampering involving his CPAP machine.  (ECF No. 2 at 3.)  He claimed the defendants in that case "commenced a coordinated campaign to dismantle [the Google and IBM] infrastructure and purge all associated data."  (*Id.*)  He claimed there was "active deletion" by Google and "imminent deletion" by IBM of data.  (*Id.* at 4.)

To the extent this can be read as an allegation of evidence spoliation, it too would not be plausible as a "claim" against IBM, and thus no leave to amend it will be provided.  Spoliation is defined as "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Techs. Inc. v. Samsung Elec. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004).  Spoliation is not a claim nor is it an affirmative defense, but rather it is an evidentiary doctrine. *See, e.g., Elias v. Lancaster Gen. Hosp.*, 710 A.2d 65 (Pa. Super. Ct. 1998) (stating Pennsylvania does not recognize a tort of negligent spoliation); *U.S. Bank Nat'l Ass'n v. Gerber*, 380 F. Supp. 3d 429, 440 (M.D. Pa. 2018) ("[S]poliation is not an affirmative defense but rather an evidentiary doctrine." (citing *Donohoe v. Am. Isuzu Motors, Inc.*, 155 F.R.D. 515, 520 (M.D. Pa. 1994))).  It is an adverse inference that permits a jury to infer that destroyed evidence might or would have been unfavorable to the position of the offending party. *Mosaid Techs.*, 348 F. Supp. 2d at 336.  Accordingly, IBM's alleged failure to preserve records cannot be a basis of a plausible claim based on spoliation.

In Count I of his Complaint Grossinger asserts an ADA claim against Google.  The ADA has four subchapters, covering employment, public services, public accommodations and services operated by private entities, and "miscellaneous."  *See generally* 42 U.S.C. §§ 12101-12203.  Since Google is a private entity, any claim under the statute would fall under Title III. *See id*. § 12181(6) (defining the term "private entity" to mean "any entity other than a public entity (as defined in section 12131(1) of this title)" (*i.e.*, a state or local government or Amtrak)).

Private entities are barred from discriminating in Title III on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.  *Id*. § 12182(a).  A "public accommodation" includes establishments such as hotels, restaurants, theaters, retail stores, service provider locations such as laundromats and pharmacies, museums, schools, day care or senior centers, and places of exercise or recreation.  *Id*. § 12181(7).  Acts of discrimination include, for example, imposing eligibility criteria that tend to screen out an individual with a disability, failing to make reasonable accommodations, failing to take steps to ensure that no disabled person is excluded, denied services, segregated or otherwise treated differently, and failing to remove barriers.  *Id*. § 12182(b)(2).  To state a claim under Title III of the ADA, a plaintiff must plausibly allege that:  (1) he has a disability; (2) the defendant is a public accommodation within the meaning of the statue; and (3) he was denied goods, services, facilities, privileges, advantages or accommodations due to discrimination based on his disability, which can include failure to reasonably accommodate his disability.  *See Matheis v. CSL Plasma, Inc*., 936 F.3d 171, 175 (3d Cir. 2019); *Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002).  A plaintiff is disabled for purposes of the ADA if he (1) has a "physical or mental impairment that substantially limits one or more" of her "major life activities"; (2) has "a

12

record of such an impairment"; or (3) is "regarded as having such an impairment."  *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citing 42 U.S.C. § 12102(1)).

The ADA definition of "disability," applicable to the entire statute, provides that a disability is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  *Id*. § 12102(1).  "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id*. § 12102(2)(A).

A complaint must allege enough facts to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (cleaned up and citation omitted)).  "A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."  *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021).  Grossinger has failed to allege facts to make plausible his ADA Title III claim against Google (or IBM for that matter) because he has failed to allege in the Complaint that he has a disability.

Stated simply, Grossinger fails to allege any facts about how or why he is disabled or how that disability limits a major life activity, rendering all of his ADA claims implausible. *Accord*, *Atamian v. Burns*, 236 F. App'x 753, 755 (3d Cir. 2007) (*per curiam*) (affirming district court's dismissal of ADA claim where the plaintiff "failed to allege that he is a disabled person

within the meaning of the ADA"); *Morrow v. S. Side Area Sch. Dist*., No. 22-1142, 2023 WL 6260107, at *3 (W.D. Pa. Sept. 25, 2023) ("Plaintiff's Complaint asserts only that she 'was diagnosed with ADHD and anxiety in or about 2016.' . . .  Even taking this allegation as true, a diagnosis standing alone is insufficient to establish a disability under the ADA.") (collecting cases); *Van Der Poel v. Mannheim Auto Auction*, No. 08-5607, 2009 WL 1754598, at *1 (E.D. Pa. June 18, 2009) ("Even accepting, as the Court must, all the allegations in the Complaint as true, Plaintiff's claim under the ADA fail [sic] because Plaintiff has failed to allege that he is a disabled person within the meaning of the ADA.  Specifically, Plaintiff fails to allege anywhere on the face of his Complaint or attached letter that his cardiomyopathy and high blood pressure are physical or mental impairments which substantially limit one or more of his major life activities.").

The Title III claim against Google is further rendered implausible because Grossinger has not alleged that Google, or IBM to the extent it is implicated in an ADA violation, provide a place of public accommodation.  He alleges only that the disability discrimination involves his use of web-based products like Google Workspace, Gmail, Drive and IBM Cloud services. Nowhere does Grossinger allege that an event occurred at a *physical* place of public accommodation where he suffered disability discrimination.  Courts are split on the question of whether the term "public accommodation" requires a physical place or location.  *See Peoples v. Discover Fin. Servs., Inc.*, 387 F. App'x 179, 183 (3d Cir. 2010) (describing split amongst the courts of appeals).  Some courts apply the ADA to a good or service regardless of whether the service or privilege is connected to a physical location.  *See, e.g.*, *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England*, 37 F.3d 12, 19 (1st Cir. 1994) (finding that establishments of "public accommodation" are not "limited to actual physical structures").

14

These courts generally invoke Congress's intent to ensure that people with disabilities have access to the same services enjoyed by people who are not disabled. *See Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) ("The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services.").

But the United States Court of Appeals for the Third Circuit, among other courts, has concluded that an actual, physical location is necessary. *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place. . . ."); *see also Peoples*, 387 F. App'x at 183 ("Our court is among those that have taken the position that the term ["public accommodation"] is limited to physical accommodations."); *see also Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997) (*en banc*) and *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000). These courts reason that all of the entities enumerated as examples of public accommodations in 42 U.S.C. § 12181(7), hotels, restaurants, theaters, laundromats, and the like, refer to physical places. *See Ford*, 145 F.3d at 612 (noting that requiring a physical location "is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places"). Even though a physical place or location is required, the Third Circuit has held that a good or service provided by a public accommodation can be covered by the ADA as long as there is "some nexus between the services or privileges denied and the physical place. . . ." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998).

Thus, for example, this Court has interpreted the Third Circuit's instruction that public accommodations are limited to physical places (or services with a nexus to a physical location) to mean that a website, on its own, is *not* a public accommodation within the meaning of the

15

ADA.  *See Mahoney v. Bittrex, Inc.*, No. 19-3836, 2020 WL 212010, at *2 (E.D. Pa. Jan. 14, 2020) ("A website, by itself, is not a physical location and therefore does not constitute a place of public accommodation under Section 12182(a) of the ADA."); *Walker v. Sam's Oyster House, LLC*, No. 18-193, 2018 WL 4466076, at *2 (E.D. Pa. Sept. 18, 2018) ("A website is not a physical location and therefore does not constitute a place of public accommodation under Section 12182(a) of the ADA."); *Tawam v. APCI Fed. Credit Union*, No. 18-122, 2018 WL 3723367, at *6 (E.D. Pa. Aug. 6, 2018) (citing statutory definition of "public accommodation" in support of conclusion that the defendant's physical location, rather than its website, was the place of public accommodation).  Since Grossinger alleges that he interacted with Google exclusively through web portals or other electronic means and fails to allege any nexus between the services or privileges denied and a physical place, the public accommodation element has not been alleged plausibly under the law applicable in this Circuit.

Finally, Grossinger has failed to allege that Google discriminated against him in its provision of the services of a public accommodation *based on his disability*.  Even if a person is disabled, that does not mean that any action with negative impact on their lives happened *because* they are disabled.  *See Riboldi v. Warren Cnty. Dep't of Hum. Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (*per curiam*) (affirming district court dismissal of ADA claim where plaintiff "failed to allege facts plausibly indicating that he was denied benefits or services *on account of* his disability"); *Thomas v. Murphy Oil Corp.*, 777 F. App'x 377, 380 (11th Cir. 2019) (*per curiam*) ("Plaintiff's bare conclusory allegations that Defendants discriminated against him based on his race or disability is not enough to avoid dismissal."); *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016) (*per curiam*) ("J.A.M. did not allege that he was dismissed because of his mental disability.  Rather, he

16

alleged that he was dismissed because he breached his agreement to abstain from alcohol consumption. At best, Nova discriminated on the basis of J.A.M.'s alcohol-related behavioral misconduct, not his disability. As such, J.A.M. failed to allege that Nova discriminated against him on account of his disability and, therefore, failed to state a claim under Title III."); *Lewis v. Adirondack Med. Ctr.*, No. 24-376, 2024 WL 4448870, at *3 (N.D.N.Y. Oct. 9, 2024) ("[N]owhere in the complaint does Plaintiff suggest he did not receive Lake Placid Sports Medicine, PLLC's services *because of a disability* or that he was otherwise discriminated against on this basis"); *Chavous v. Hous. Visions Unlimited, Inc.*, No. 22-811, 2022 WL 9967833, at *4 (N.D.N.Y. Oct. 17, 2022) ("Here, the complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff. Thus, Plaintiff has failed to state a claim upon which relief may be granted pursuant to Title III of the ADA."), *report and recommendation adopted*, 2023 WL 1775699 (N.D.N.Y. Feb. 6, 2023); *Brennan v. NCAComp Inc.*, No. 22-127, 2022 WL 4290660, at *8 (N.D.N.Y. Apr. 25, 2022) ("The Amended Complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff. Although the Amended Complaint appears to allege that: (1) Defendant NCAComp denied Plaintiff's claims in an effort to save money," it does not "allege that Defendants took these actions for the purpose of discriminating against Plaintiff because of an alleged disability."), *report and recommendation adopted*, 2022 WL 3097843 (N.D.N.Y. Aug. 4, 2022); *Tasambasis v. Pac. Aerospace Mach., Inc.*, No. 14-457, 2014 WL 12603098, at *1 (C.D. Cal. Apr. 4, 2014) (plaintiff's failure to allege he was denied access to any place of public accommodation on account of a disability rendered Title III claim implausible).

Because Grossinger fails to allege that any Defendant acted or refused to act because he is disabled, whether his claim is based on the provision of a public accommodation, the provision of a service, or otherwise, the claim is not plausible. Stated simply, Grossinger's core dispute with Google over the cancellation of the Bunny's Flowers accounts – presumably for nonpayment of fees as suggested by his exhibits – is a dispute that any person might have with a provider of data services regardless of a disability, and Grossinger does not plausibly allege that he has been subject to discrimination *because of* his disability. Accordingly, the Title III claims are dismissed. Since, even if Grossinger could plausible allege facts that he is a disabled person, as no Title III Defendant provides a service at a physical location, the dismissal will be with prejudice.

## C.    ADA Claim Against Watson

Title II of the ADA, applicable to Watson as a governmental official named in his official capacity, *see Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132. To state a plausible claim under Title II of the ADA, a plaintiff must allege that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Montanez v. Price*, 154 F.4th 127, 146 (3d Cir. 2025) (citing *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018)).

Title II provides a cause of action for disabled individuals claiming that they were denied access to state courts because of their disabilities. *See Tennessee v. Lane*, 541 U.S. 509, 533-34

(2004) (recognizing that Title II of the ADA validly abrogates state sovereign immunity "as it applies to the class of cases implicating the fundamental right of access to the courts").  Title II includes within its prohibition against discrimination the failure to make "reasonable accommodations."  *See Haberle v. Troxell*, 885 F.3d 170, 180 (3d Cir. 2018).  When determining whether an accommodation is reasonable, courts consider "whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program."  *Doe 1 v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668, 694-95 (E.D. Pa. 2022) (quoting *Helen L. v. DiDario*, 46 F.3d 325, 337 (3d Cir. 1995)).  "A public entity need not make 'fundamental' or 'substantial' alterations to accommodate a disabled individual."  *Id*. at 695 (citing *Alexander v. Choate*, 469 U.S. 287,  300 (1985)).

As the Court has already stated, Grossinger has not alleged in his Complaint that he is a qualified person with a disability, rendering the Title II claim implausible.  The Court will permit Grossinger to file an amended complaint to develop this claim.

### D.      Civil Rights Claim Against Watson

Grossinger also asserts a First Amendment access-to-courts claim under 42 U.S.C. § 1983 against Watson.  "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"  *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))).  To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury."  *Karns v. Shanahan,* 879 F.3d 504, 520 (3d

19

Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).

To be plausible, an access-to-the-courts claim must include as an element that the "denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a person claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a plaintiff identifies a "nonfrivolous" and "arguable" claim or defense was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*.

There are two types of access-to-courts claims, backward and forward looking. Grossinger appears to attempt to assert a forward-looking claim: official action that "frustrates a plaintiff . . . in preparing and filing suits at the present time." *Christopher*, 536 U.S. at 413. The object of this type of suit "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id*. Backward-looking claims, on the other hand, involve those allegations that "cannot now be tried . . . no matter what official action

20

may be in the future." *Id*. at 414. Whether the claim is forward or backward looking, the elements of both claims are the same. A plaintiff raising an access-to-courts claim must plead: (1) a "nonfrivolous," "arguable" underlying claim; (2) the official acts obstructing the litigation; (3) "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id*. at 415. "The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and must describe the 'lost remedy.'" *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008). Specifically, the United States Supreme Court has explained that in the context of alleging the underlying claim that the plaintiff was prevented from pursuing, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued [.]" *Christopher*, 536 U.S. at 417-18; *see also Crisano v. Grimes*, No. 19-1612, 2021 WL 120943, at *12 (E.D. Va. Jan. 12, 2021) (noting in either a forward looking or backward looking access to courts claim, "the underlying cause of action, whether anticipated or lost, *is an element that must be described in the complaint*, just as much as allegations must describe the official acts frustrating the litigation.") (emphasis in original).

Grossinger's constitutional claim is not plausible. While he described actions by Watson that may have obstructed his filing papers in state court, he does not describe the underlying cause of action in any way. It is incumbent upon Grossinger to describe the underlying claim or defense, explain how it is nonfrivolous, and identify a remedy he cannot receive in that underlying suit. The Court will permit Grossinger to file an amended complaint to develop this claim as well.

### E.     State Law Claim

21

Grossinger also asserts a breach of contract claim against Google.  Having dismissed his federal law claims the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  The citizenship of an LLC like Google LLC "is determined by the citizenship of its members."  *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 420.  "[W]here an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC."  *Id.* (internal quotations omitted).  At the pleading stage, a plaintiff need not affirmatively allege the citizenship of an LLC if he alleges, after a reasonable investigation, that the members of the LLC are not citizens of his state of citizenship.  *See Lincoln Benefit Life Co.*, 800 F.3d at 102.

It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461

F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020). Grossinger does not allege the citizenship of the parties.  Rather, he provides only a Pennsylvania addresses for himself and asserts that Watson is a government official in Bucks County, which suggests that they are both Pennsylvania citizens defeating complete diversity. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.    CONCLUSION

For these reasons, the Amended Complaint will be dismissed on statutory screening because Grossinger's claims under the ADA and § 1983 are not plausible and there is no jurisdiction over any state law claim.  The Court concludes that any attempt at amendment of the ADA Title III claims would be futile.  Accordingly, those claims will be dismissed with prejudice.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that district courts should dismiss complaints on statutory screening with leave to amend "unless amendment would be inequitable or futile.").  Grossinger will be granted leave to amend his ADA Title II and § 1983 claim against Watson.  An Order with additional information on amendment will be entered that also denies all pending motions for emergency relief since Grossinger has failed to show that he is likely to succeed on the merits of any claim.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65.

BY THE COURT:

S/ WENDY BEETLESTONE

_____

WENDY BEETLESTONE, C.J.

23